IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:22-CR-169 |
| v. | The Hon. M. S. Nachmanoff |
| AYMAN BENMESSAOUD | Sentencing: January 19, 2023 |
| *Defendant*. | |

## GOVERNMENT'S POSITION ON SENTENCING

The defendant, Ayman Benmessaoud, comes before the Court for sentencing, having pleaded guilty to his role in a conspiracy that distributed deadly fentanyl laced counterfeit Percocet pills in the Commonwealth of Virginia, and which included the defendant's use and discharge of a firearm during and in relation to that conspiracy.

The United States has reviewed the updated Presentence Investigation Report (PSR), ECF No. 36, and has no objections to the Probation Officer's calculation of the defendant's advisory Sentencing Guidelines, as set forth in paragraphs 35-50 and Part D.  Further, the United States agrees that the defendant has assisted authorities in the prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, and in this filing the Government makes a Motion to apply the additional one-level decrease in the offense level pursuant to United States Sentencing Guidelines (USSG) §3E1.1(b).  The Probation Officer has already accounted for the one-level decrease pursuant to USSG §3E1.1(b) in its Guidelines calculation.  PSR ¶ 49.  The defendant's guidelines range is

properly calculated at 271-308 months, and Count One carries a mandatory minimum sentence of ten years that must be served consecutive to all other counts. PSR ¶ 86.

For the reasons set forth herein, the United States respectfully submits that a sentence of at the low end of the defendant's Guidelines is appropriate in this case and is sufficient but not greater than necessary to fulfill the purposes of sentencing in this case.

## BACKGROUND

### I. *The offense conduct*

The defendant's conduct is accurately stated in the Statement of Facts submitted to the Court (ECF No. 34) and is only summarized here. Between July of 2020 and at least March of 2021 the defendant engaged in a conspiracy with others to distribute counterfeit oxycodone pills that were in fact fentanyl laced pills. The defendant worked with his co-conspirators to obtain and distribute the fentanyl pills, including personally distributing at least hundreds of pills. The defendant utilized social media platforms, to include snapchat, to advertise for sale fentanyl pills using posts that included photos of hundreds of pills and messages intended to entice others to purchase the pills. The defendant had approximately 471 snapchat contacts. PSR Addendum, Page 27.

As part of the conspiracy, in late October 2020, the defendant and two of his co-conspirators were staying in a hotel room at the Holiday Inn and Suites in Old Town Alexandria. A co-conspirator, and the primary supplier to the defendant, rented the hotel room. Over the next several days the defendant and his co-conspirators used the hotel room as a base of operations for their drug dealing. During this time, the defendant personally distributed fentanyl pills to customers at the hotel. The defendant and his co-conspirators possessed multiple firearms while at the hotel, which included two .38 caliber revolvers and a Tec-9 semiautomatic pistol with an extended magazine, for the purpose of protecting themselves, their drugs, and their drug proceeds from

others who may try to rob them. The defendant posted multiple photos depicting firearms, fentanyl pills, and large amounts of U.S. currency to social media platforms while at the hotel.

In the early morning hours of October 26, 2020, the defendant and his two co-conspirators were in the hotel room, along with a large amount of drug proceeds from the sale of fentanyl pills, when two individuals attempted to rob them. The two individuals entered the hotel room with firearms and engaged in a physical struggle with one of the defendant's co-conspirators. The defendant was armed with a .38 caliber revolver and when one of the intruders fired their gun, the defendant fired the .38 caliber revolver two times at that individual. The intruders fled the hotel room, and the defendant and his co-conspirators also attempted to flee the area before police arrived. Although contacted by police within the hotel, the defendant was able to escape the area without being detained.

The defendant's two co-conspirators fled the hotel via a different route and encountered Alexandria City Police officers near the hotel. Those officers were responding to the 911 calls related to the exchange of gunfire the defendant had just participated in. The defendant's two co-conspirators engaged in a shootout with police officers and a police officer was shot in the leg. A second shootout between one of the defendant's co-conspirators and police officers occurred a short time later, and that co-conspirator was fatally wounded. The other co-conspirator escaped the area but later turned himself into police.

In furtherance of the conspiracy, the defendant personally distributed or possessed with the intent to distribute with his co-conspirators thousands of fentanyl pills, and it was reasonably foreseeable to the defendant that his co-conspirators distributed or possessed with the intent to distribute at least 400 grams but less than 1.2 kilograms of fentanyl.

## II. *The Defendant's Procedural History*

The defendant was charged by criminal complaint on May 31, 2022, in case number 1:21-mj-133. ECF No. 1. The arrest warrant was served on the defendant on June 14, 2022, and the defendant made his initial appearance on that date. ECF No. 8-9. On September 22, 2022, the defendant pleaded guilty to a two count Criminal Information charging him with: Count 1: Discharge of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c); Count 2: Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846. ECF No 31-34.

## SENTENCING ANALYSIS

### I. *Law*

The Court consults both the Sentencing Guidelines and the sentencing factors in 18 U.S.C. § 3553(a) to determine a defendant's appropriate sentence. Although the Sentencing Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Under the required procedures, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the Guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the Guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph 2 lists four purposes for a sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).  In addition to the purposes of sentencing listed in Section 3553(a)(2), a sentencing court must also consider: (1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need for restitution.  18 U.S.C. § 3553(a).

II.     *Guidelines Calculation*

The calculated offense level, as in most drug cases, including many of those involving additional firearms counts, is driven by the applicable drug weight.  Here, the parties have stipulated that the base offense level is 30, because the defendant is attributed with between 400 grams and 1.2 kilograms of fentanyl.  PSR ¶¶ 4, 27, 37.  There is one applicable enhancement, and no reductions under Chapter 2 of the Sentencing Guidelines, and no enhancement or reduction based on the defendant's role in the offense.

A two-level enhancement pursuant to USSG 2D1.1(b)(7) has been properly applied by the Probation Officer.  As noted in the Statement of Facts and the Addendum to Presentence Report (PSR Addendum), the USSG 2D1.1(b)(7) enhancement is applicable and properly applied in this case because the defendant used social media platforms to advertise and sell pills containing fentanyl.  This included the defendant's posting of photographs of hundreds of fentanyl pills as part of the ongoing conspiracy.  PSR ¶ 17; PSR Addendum, Page 27.  The defendant marketed the fentanyl pills he was selling to a large number of people in hopes of inducing them to purchase the fentanyl pills by posting photos of large numbers of fentanyl pills along with captions such as "Going fast; Quality content".  PSR Addendum, Page 27.  As noted in the PSR Addendum, the

5

defendant used an interactive computer service to broadcast the solicitation of fentanyl pills to large numbers of people, to include at least his approximately 471 snapchat contacts. *Id*. The defendant's solicitations were not made to only his co-conspirators, or a few select individuals. The defendant's solicitations were broadcast generally to a large group of persons in an attempt to sell the thousands of fentanyl pills the defendant and hi co-conspirators had available for distribution. Therefore, the two-level enhancement pursuant to USSG 2D1.1(b)(7) is appropriate applied to the defendant's offense level calculation, and results in an adjusted offense level of 32. PSR ¶ 42.

The "Multiple Count Adjustment" which considers Count One of the criminal information (for violation of 18 U.S.C. 924(c)) does not result in a change to the adjusted offense level, and the "Combined Adjusted Offense Level" is therefore also 32. PSR ¶ 47.

The USSG Chapter Four Enhancement is relevant to the defendant because he is a career offender, and that calculation must be conducted. PSR ¶ 47. Pursuant to USSG §4B1.1 the offense level for career offender is based upon the offense statutory maximum term of imprisonment. Here, the offense statutory maximum used is for Count Two (conspiracy to distribute fentanyl in violation of 21 U.S.C §§ 841(a)(1) and 846), which carries a statutory maximum term of imprisonment of twenty years. Pursuant to USSG §4B1.1(b)(3), the offense level for an offense punishable by more than 20 years, but less than 25 years, is 32. USSG §4B1.1(b)(3). Therefore, the applicable offense level for career offender is properly calculated at 32. PSR ¶ 47. The government notes that defendant's offense level calculation results level 32 under both USSG 2D1.1 (Conspiracy to Distribute Controlled Substances) and USSG §4B1.1(b)(3) (Career Offender), before taking into account acceptance of responsibility reductions.

The government concurs with the Probation Officer's application of the two-level reduction for acceptance of responsibility under § 3E.1.1(a). PSR ¶ 48. As noted on page one of this filing, the government hereby moves for an additional one-level reduction under § 3E1.1(b), which the Probation Officer has already calculated in the Guidelines calculations. PSR ¶ 49. The defendant's adjusted offense level is therefore properly calculated at 29. PSR ¶ 29.

The defendant's multiple prior misdemeanor and felony convictions result in a criminal history score of 10, and pursuant to USSG §4A1.1(d) two additional criminal history points are added because the defendant was under a criminal justice sentence in multiple jurisdictions at the time he committed the instant offenses. PSR ¶¶ 51-61. The total criminal history score is therefore 12, which would ordinarily establish a criminal history category of V. PSR ¶ 62. However, the defendant qualifies as a career offender under the USSG because "(1) the defendant was at least 18 years old at the time of the instant offense of conviction; (2) the instant offense of conviction is a felony that is a controlled substance offense; and (3) the defendant has at least two prior felony convictions for a controlled substance offense." PSR ¶ 47. Therefore, pursuant to USSG §4B1.1(b), the defendant's criminal history category is properly calculated as VI. PSR ¶ 47, 62.

An adjusted offense level of 29 and criminal history category VI would yield a Guidelines range of 151-188 months; however, the defendant's Guidelines range is determined pursuant to USSG §4B1.1 (Career Offender) because the defendant has been convicted of a violation of 18 U.S.C. 924(c) and he also qualifies as a career offender. In Part D of the PSR, the Probation Officer accurately and succinctly explains the proper application of USSG §4B1.1 (Career Offender) where the offenses of conviction include a violation of 18 U.S.C. §924(c) along with another offense of conviction, and notes how that impacts the defendant's Guidelines in this case:

7

>If the defendant is convicted of 18 U.S.C. § 924(c) and the defendant is determined to be a career offender, the applicable Guideline range shall be the greater of the Guideline range that results by adding the mandatory minimum consecutive penalty required by 18 U.S.C. § 924(c) to the minimum and the maximum of the otherwise applicable Guideline range determined for the count of conviction other than the 18 U.S.C. § 924(c) count (in this case, the otherwise applicable Guideline range is 151-188 months) and the Guideline range table in subsection USSG §4B1.1(c)(3). The corresponding Guideline range in the Guideline range table in subsection USSG §4B1.1(c)(3) is 262-327 months; therefore, the greater Guideline range of 271-308 months applies. USSG §4B1.1(c)(2)(A)(B).

PSR ¶ 86.

The government concurs with the Probation Officer's application of USSG §4B1.1 to the defendant's Guidelines calculation and agrees that the appropriate Guidelines range in this case is determined by adding the mandatory minimum consecutive penalty required by 18 U.S.C. 924(c) to the applicable Guidelines range of the applicable Guidelines range for the count of conviction other than the 18 U.S.C. 924(c) count.  The mandatory minimum consecutive penalty required by 18 U.S.C. § 924(c) in this case is 10 years, or 120 months. 18 U.S.C. § 924(c)(1)(A)(iii); PSR page 1, ¶ 81).  In this case, the applicable Guideline range for the count of conviction other than the 18 U.S.C. 924(c) count is determined by looking to the Guidelines range for the conspiracy to distribute fentanyl that is charged in Count Two.  As discussed above, the Guidelines range for conspiracy to distribute fentanyl in this case results in an adjusted offense level of 29 and criminal history category VI, which yields a Guidelines range of 151-188 months.  Adding the 120-month mandatory

8

minimum sentence to the applicable Guideline range of 151-188 months results in an applicable Guideline range of 271-308 months. *See*, PSR ¶ 86.

### III.     *Sentencing Analysis*

As the Court is well aware, after calculating the applicable Guidelines range, a sentencing court must then consider that range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to 18 U.S.C. § 3553(a)'s enumerated factors, of particular relevance here are the "the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense", "to promote respect for the law," "to protect the public from further crimes of the defendant," "to afford adequate deterrence to criminal conduct" and "to provide the defendant with needed education or vocational training . . . or other correctional treatment." 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(D), (6). As explained below, based on those factors, a sentence at the low end of the Guidelines range is an appropriate and reasonable sentence for the defendant.

The "history and characteristics of the defendant" weigh in favor of a lengthy prison sentence that takes into account the defendant's criminal history and career offender status. The defendant has an extensive criminal history that includes three prior felony drug distribution related convictions, a felony larceny conviction, and multiple misdemeanor convictions. On September 14, 2017, the defendant was convicted of one count of felony Possession with Intent to Distribute Marijuana, and one count of felony Distribution of a Schedule IV Drug. PSR ¶ 56. On February 16, 2018, the defendant was convicted of felony Possession with Intent to Distribute a Schedule IV Substance and misdemeanor Possession with Intent to Distribute

9

Marijuana. PSR ¶ 57. Despite having multiple convictions related to drugs and drug distribution, and serving jail time for distributing drugs, the defendant chose to again engage in drug trafficking. Particularly concerning to the government is that the defendant's behavior escalated to far more serious and deadly narcotics and more dangerous conduct. The defendant not only returned to the distribution of drugs, but he began selling a far more dangerous substance than he had previously been convicted of distributing. Furthermore, the defendant began using and carrying firearms in furtherance of his drug dealing, and actually discharged a firearm during that conspiracy.

The sentence in this case should also reflect the fact that the defendant has a long history of violating court orders and probationary terms that were placed on him in lieu of active incarceration. The defendant has a lengthy history of violating the terms of his probation and has demonstrated he is unwilling to abide by the rules and restrictions placed on him by Virginia Courts and probation offices. The repeated probation violations, paired with the fact that the despite being on active felony probation in multiple jurisdictions the defendant was not deterred from again engaging in drug distribution, demonstrates that probationary services will not be adequate to prevent the defendant from reoffending and further harming the community. The history and characteristics of the defendant weigh in favor of a lengthy prison sentence.

The extremely dangerous nature of the defendant's conduct is readily apparent in this case. The defendant was carrying a firearm in furtherance of a drug trafficking conspiracy, was distributing one of the deadliest drugs that this country has ever seen , and discharged his firearm inside of a hotel occupied by innocent people. The result of the defendant being an armed drug trafficker that utilized social media to market fentanyl pills, as well as to flaunt photos of firearms and large amounts of cash/profits, led to an attempted robbery of the defendant and his

10

co-conspirators. That attempted robbery went as could be expected and led to the defendant firing his gun inside of the Holiday Inn. It also led to his co-conspirators engaging in gun battles with police as they attempted to flee through the area that is a usually safe and calm residential area. An Alexandria City Police officer was shot by one of the defendant's co-conspirators, and one of the defendant's co-conspirators was killed by gunfire. The defendant's conduct was not only dangerous to himself but put completely innocent people in serious risk of extreme bodily harm or death.

The Government fully understands that the defendant and his co-conspirators were the target of the attempted robbery that occurred at the Holiday Inn and Suites in Old Town, Alexandria. That fact does not lessen the seriousness of the offense, or the need to impose a severe punishment. The defendant chose to be an armed drug trafficker and took on the risks that come along with that profession. The events that unfolded in the early morning hours of October 26, 2020 were well within the foreseeable outcomes for a group of individuals dealing fentanyl, and who were carrying firearms to protect their drugs and profits. The level of seriousness of the offenses committed by the defendant is unquestionably extremely high given the shooting committed by the defendant, but the seriousness of the defendant's conduct is certainly not solely due to his discharged of a firearm within a hotel.

The dangerousness of the defendant's conduct of firing a gun inside of hotel should not distract from the fact that his conduct of selling fentanyl was also an extremely dangerous and potentially deadly endeavor that put the lives of countless people at risk. The dangerous fentanyl that the defendant was distributing in Northern Virginia has devastated communities throughout the United States. The devastating impact of this opioid epidemic in the United States has been clearly evident in the Commonwealth of Virginia. In Virginia in 2013, there were 134 overdose

11

deaths attributed to fentanyl. Va. Dept. of Health, Office of the Chief Medical Examiner, Fatal Drug Overdose Quarterly Report 3rd Quarter 2021, p.36, *available at* https://www.vdh.virginia.gov/content/uploads/sites/18/2022/01/Quarterly-Drug-Death-Report-FINAL-Q3-2021.pdf. Since 2013, the number of fatal overdose deaths caused by fentanyl has dramatically increased, and since 2016 fentanyl has been the leading cause of fatal overdoses in Virginia. *Id.* In 2016, the number of overdose deaths caused by fentanyl had jumped to 622, and by 2017, the number of overdose deaths jumped to 769. *Id.*

Comparison of the number of fatal overdose deaths in Virginia cause by fentanyl, to deaths caused by heroin, illustrates just how much more dangerous fentanyl is than other opioids. It also clearly puts into perspective the devastating impact fentanyl is having on the communities of Virginia. Between 2017 and 2019, the number of overdose deaths caused by heroin stayed steady with just under 560 deaths for each of those three years. *Id.* In contrast, between 2017 and 2019, fentanyl overdose deaths rapidly increased in number from year to year, with 769 deaths in 2017, 813 deaths in 2018, and 964 deaths in 2019. *Id.* In 2020 and 2021, the number of deaths caused by heroin overdoses decreased, with 518 deaths in 2020, and 437 deaths in 2021. In stark contrast, 2020 and 2021 saw the number of fentanyl overdose deaths skyrocket in Virginia, jumping to 1,659 deaths in 2020, and 2,042 deaths in 2021. *Id.*

The sentence imposed in this case should reflect the unquestionable seriousness of the offenses committed by the defendant, the significant and foreseeable danger created by the defendant's conduct of distributing a known deadly substance, and the significant and foreseeable danger created by the defendant's carrying and discharge of a firearm to protect his drugs and drug profits. The defendant's Guidelines range is high, but that guidelines range is appropriate given the defendant's lengthy criminal history and the extremely deadly behavior that he willfully

engaged in despite being under criminal justice sentences in multiple jurisdictions. *See* PSR ¶ 61. A sentence at the low end of the Guidelines would adequately "reflect the seriousness of the offense" and "provide just punishment for the offense."18 U.S.C. §3553(a)(2)(A).

A sentence at the low end of the Guidelines will send a strong message to the defendant that will serve as specific deterrent, and also send a strong message to the public at large that will serve as a general deterrent. The conduct that the defendant is being sentenced for created an extreme danger to the public, and a statement should be made that such conduct will result in serious consequences. The defendant was dealing a deadly drug, carrying a firearm to protect himself and his product, and was willing to discharge that gun inside of a hotel room when others tried to steal his drugs and drug profits. When police responded to the "shots fired" call related to the defendant firing his gun, the defendant's co-conspirators attempted to flee and in doing so shot a police officer. Furthermore, one of the defendant's co-conspirators was killed in the gun battle with police officers. This is the exact kind of dangerous behavior that the Court and public fear will result when drug dealers arm themselves.

The defendant is deserving of a lengthy prison sentence to send a clear message to the defendant specifically, and the public generally, that those who engage in the sale of fentanyl while armed with firearms will face severe punishment for their actions. A sentence at the low end of the Guidelines is appropriate, will "afford adequate deterrence to criminal conduct" and will incapacitate the defendant for an extended period of time in order to "protect the public from further crimes of the defendant." 18 U.S.C. §3553(a)(2)(A), (a)(2)(B).

Despite having a loving and supportive home life, the defendant has engaged in a life centered on drugs and drug dealing. *See* PSR ¶ 68-72. The defendant has clearly battled with substance abuse issues for years, and continued substance abuse treatment is necessary. PSR ¶¶

75-78. The government acknowledges that the defendant's completion of the ACT Program in the Arlington County Jail is a positive step in the right direction, and hopes the defendant benefited from that program. *See* PSR ¶ 78. While the government is pleased to see the defendant has finally decided to take seriously substance abuse programs offered to him, the defendant's drug addiction issues and recent willingness to accept treatment do not change the fact that a long prison sentence is warranted in this case. The defendant has previously been put on notice many times that his substance abuse issues were a major issue in his life, but he repeatedly refused to participate meaningfully in treatment or counseling despite being ordered to do so by multiple Virginia County Courts and probation offices. *See*, PSR ¶¶ 52, 56-58. The government believes the defendant needs continued substance abuse treatment and believes a positive impact of the prison sentence imposed in this case is that it could "provide the defendant with needed education or vocational training . . . or other correctional treatment." 18 U.S.C. 3553(a)(2)(D). The government hopes the defendant continues to address his substance abuse issue while incarcerated and can maintain a life free from illegal narcotics use upon his release from custody.

      The government submits that a sentence of at the low end of the Guidelines is sufficient but not greater than necessary to fulfill the purposes of sentencing in this case.

## CONCLUSION

      The defendant chose to conspire with others to distribute thousands of fentanyl pills to his customers. The defendant also chose to carry a firearm and was willing to fire that gun to protect his drugs and drug profits. The defendant engaged in this behavior despite his lengthy felony record, being on active felony probation, and having been provided with many opportunities to address his substance abuse issues. The defendant's actions endangered the lives of many people in the community, as well as his own life. For the reasons stated herein, the United States submits

that a sentence of imprisonment of at the low end of the guidelines is sufficient but not greater than necessary to satisfy the sentencing factors in Section 3553(a).

                                      Respectfully submitted,

                                      Jessica D. Aber
                                      United States Attorney

By:        /s/
                                        Ryan B. Bredemeier
                                        Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2023, I filed the foregoing with the Clerk of Court using using the CM/ECF system, which will send a notification of such filing to all counsel of record in this matter. I further certify that I will forward an electronic copy of the foregoing to the United States Probation Officer assigned to the case.

                                                /s/
Ryan B. Bredemeier
Assistant United States Attorney
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299-3982
ryan.bredemeier@usdoj.gov